UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
UNITED STATES OF AMERICA,

                                           MEMORANDUM & ORDER

      v.                                           06-Cr.-285 (NGG)

GINO GALESTRO, et. al.,

            Defendants
----------------------------------------------------------X
GARAUFIS, United States District Judge.

      On June 28, 2006, the Government moved to disqualify Richard Levitt, Esq. ("Levitt"), Nicholas Kaizer, Esq. ("Kaizer"), and their law firm from representing Gino Galestro ("Galestro"), on the basis that Levitt previously represented a cooperating witness who is expected to testify against Galestro in this matter. The prior client, Michael Maggio ("Maggio") was represented by Levitt regarding allegations identical to those charges now facing Galestro. (Gov't Ltr. Br., dated June 28, 2006, at 1.) Oral argument was heard regarding the instant motion on July 20, 2006, at which time Maggio, through counsel, joined the Government's motion. (Transcript of Oral Argument, dated July 20, 2006 ("Tr."), at 3.) For the reasons set forth below, the Government's motion is GRANTED.

I.      **FACTUAL BACKGROUND**

      On January 27, 2006, an arrest warrant was issued for Maggio, who is now a cooperating witness in the instant prosecution. (Aff. Supp. Arrest Warrants, dated Jan. 27, 2006.) Levitt arranged for Maggio's surrender, and on February 1, 2006, Levitt filed a notice of appearance, and represented Maggio at his arraignment and bail hearing. (Levitt Aff., dated July 10, 2006 ("Levitt Aff.") ¶¶ 4-5; Kaizer Aff., dated July 10, 2006 ("Kaizer Aff.") ¶¶ 3-5.) Assistant United States Attorney Joey Lipton ("AUSA Lipton") provided Kaizer with transcripts of recorded

conversations in which Maggio discussed an alleged arson charged in this case, and Maggio also told Kaizer that he "participated in a murder and that the Government would likely find out about it." (Kaizer Aff. ¶ 4.) Levitt and Kaizer read to Maggio the transcripts of the recorded conversations. (Levitt Aff. ¶ 4; Kaizer Aff. ¶ 4.) Levitt and Kaizer then counseled Maggio about whether to plead guilty, either with or without cooperating with the government, or go to trial.[1] (Levitt Aff. ¶ 4.) After Maggio decided to cooperate, new counsel was appointed. (Id. ¶ 6; Kaizer Aff. ¶¶ 7-9.)

Levitt, Kaizer, and their law office now represent Galestro, a death-eligible defendant in the same indictment (Levitt Aff. ¶¶ 1-2), wherein the Government alleges, inter alia, that Galestro was a "soldier" in the Bonanno organized crime family ("OCF"), and that he conspired to murder and murdered Robert McKelvey, and conspired to commit and committed arson and robbery, in the furtherance of the Bonanno OCF. (Indictment ¶¶ 12-38.) Galestro states that Levitt and Kaizer are his counsel of choice. (Tr. at 20.)

The Government has submitted a sealed affirmation to this court, indicating that Maggio is a central witness in this matter, and a critical witness against Galestro in connection with the indictment allegations, including the alleged McKelvey murder, arson, and robbery in the furtherance of the Bonanno OCF. (Lipton Sealed Aff. ¶¶ 4-9.) Maggio joins the Government's motion in seeking Levitt and Kaizer's disqualification, stating that he does not waive the attorney client privilege, and that he discussed with Kaizer the details of the charged arson and murder,

---

[1] While the Government asserts that Levitt and Kaizer counseled Maggio on whether to cooperate with the Government, Levitt and Kaizer filed affirmations that deny any conversations with Maggio on this topic beyond advising him that it was an option. (Levitt Aff. ¶ 4; Kaizer Aff. ¶ 4.) Maggio in his affidavit does not contradict his former lawyers' assertion.

2

and other crimes, and the roles of participants in those crimes, "including the involvement of Gino Galestro." (Maggio Aff. ¶ 6.)

## II. STANDARD OF REVIEW

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The Supreme Court has held "that an element of this right is the right of a defendant . . . to choose who will defend him." United States v. Gonzalez-Lopez, 126 S. Ct. 2557, 2561 (2006) (citing Wheat v. United States, 486 U.S. 153 (1988)). However, a criminal defendant "does not have the absolute right to counsel of her own choosing," United States v. Locascio, 6 F.3d 924, 931 (2d Cir. 1993), even assuming a valid waiver of conflict, because "'[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them.'" Locascio, 6 F.3d at 931 (quoting Wheat, 486 U.S. at 160); see also United States v. Jones, 381 F.3d 114, 119 (2d Cir. 2004) ("The disqualification issue . . . implicates not only the accused's right to counsel, but also the interests of the judiciary in preserving the integrity of its processes, and the government's interest in a fair trial and a just verdict.").

The right to the effective assistance of counsel also includes the right to be represented by an attorney who is free from conflicts of interest. See, e.g., Wood v. Georgia, 450 U.S. 261, 271 (1981). Under certain circumstances, a trial court is obliged to disqualify an attorney in order to protect the defendant's right to effective assistance of counsel where the attorney has "'(1) a potential conflict of interest that results in prejudice to the defendant, or (2) an actual conflict of interest that adversely affects the attorney's performance.'" United States v. Perez, 325 F.3d 115,

3

125 (2003) (quoting United States v. Levy, 25 F.3d 146, 152 (2d Cir. 1994)). Second Circuit case law clearly defines actual and potential conflicts. "An attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action." Id. at 125 (citations omitted). A potential conflict of interest exists if "'the interests of the defendant may place the attorney under inconsistent duties at some time in the future.'" Id. (quoting United States v. Kliti, 156 F.3d 150, 153 n.3 (2d Cir. 1998)). A conflict of interest, whether actual or potential, can be so serious that a rational defendant would never knowingly or intelligently desire the conflicted lawyer's representation. In such a case, the district court *must* disqualify the attorney, without regard to any waiver on the defendant's part. Levy, 25 F.3d at 153; see also Jones, 381 F.3d at 120; United States v. Schwarz, 283 F.3d 76, 95 (2d Cir. 2002).

Where the attorney's conflict of interest involves an attorney's conflicting duties of loyalty to a defendant and a former client, the court may disqualify an attorney in order "to avoid the prospect of a conflict of interest which potentially could confer an unfair advantage on [the defendant] . . . or adversely affect [the other client's] interests." United States v. DiTommaso, 817 F.2d 201, 220 (2d Cir. 1987) (citing United States v. James, 708 F.2d 40, 45 (2d Cir. 1983); United States v. Ostrer, 597 F.2d 337, 340 (2d Cir. 1979)); see also United States v. Cunningham, 672 F.2d 1064, 1072 (2d Cir. 1982). "The principle is well established that an attorney should be disqualified from opposing a former client if during his representation of that client he obtained information relevant to the controversy at hand." Ostrer, 597 F.2d at 340 (internal quotation omitted).

The Supreme Court in Wheat, discussing the dilemma facing trial courts where a

4

defendant's preferred choice of counsel has a conflict of interest, notes that "trial courts confronted with multiple representations face the prospect of being 'whipsawed' by assertions of error no matter which way they rule." Wheat, 486 U.S. at 161; see also Jones, 381 F.3d at 120-21. Accordingly, the Wheat Court held that "the District Court must recognize a presumption in favor of petitioner's counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict." Wheat, 486 U.S. at 164; see also Jones, 381 F.3d at 120 ("[I]n situations where a potential conflict exists, one that may ripen into an actual conflict as the trial progresses, district courts must have latitude to permit or deny a defendant's waiver of such conflict."). Even in cases where a defendant waives an actual or potential conflict, the district court has "substantial latitude" in evaluating the facts and circumstances of each case to determine whether to accept or refuse the defendant's waiver of the conflict. See Wheat, 486 U.S. at 163. However, despite this "broad latitude," id., where the disqualification of a defendant's chosen counsel is erroneous, no additional showing of prejudice is required to make the violation complete, and that defendant is entitled to reversal of the conviction, as the error constitutes a "structural error" not subject to harmless error review.[2] Gonzalez-Lopez, 126 S. Ct. at 2562.

### III. DISCUSSION

The Government urges that disqualification is necessary because Maggio will be a central

---

[2] Gonzalez-Lopez has intensified the already difficult decision that must be made by district courts whether to disqualify conflicted counsel. Indeed, contemporaneous with this Memorandum and Order is my ruling on a disqualification motion in a separate criminal case, in which I found that the government did not overcome the presumption in favor of defendant's preferred counsel. United States v. Liszewski, 06-Cr.-130, slip op. (E.D.N.Y. Aug. 16, 2006) (Garaufis, J.).

5

witness against Galestro; thus, Levitt and Kaizer will be bound by their duty of loyalty to Maggio not to cross-examine him, or to otherwise use confidences obtained from Maggio during their representation of him, which raises a potentially serious conflict of interest. (Gov't Ltr. Br., dated June 28, 2006, at 5-8; Tr. at 3-5.) Levitt and Kaizer respond that there is no conflict because any confidences imparted by Maggio to Levitt and Kaizer were also revealed to the Government during Maggio's cooperation, and to the extent that a conflict exists, it does not require disqualification. Defense counsel further argue that disqualification is not warranted in light of their long relationship with Galestro and the fact that Galestro is eligible for the death penalty. (Galestro Ltr. Br., dated July 10, 2006 ("Galestro Ltr. Br."), at 7; Tr. at 8-9, 11-14, 18-20.)

I find that Levitt and Kaizer have a serious potential conflict in Maggio's previous retention of them and their current representation of Galestro. As the defense concedes (Tr. at 19), Levitt and Kaizer received confidences from Maggio during their representation of him. Maggio does not consent to their representation of Galestro or to their use of his confidences, which are material to the prosecution of Galestro. Moreover, upon review of AUSA Lipton's sworn and sealed statement to this court, I find that Maggio is a critical witness in this matter who is very likely to be called as a witness to testify against Galestro.

The applicable disciplinary rule covering conflict of interest issues related to former and present clients provides as follows:

> [A] lawyer who has represented a client in a matter shall not, without the consent of the former client after full disclosure: (1) Thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client. (2) Use any confidences or

> secrets of the former client except as permitted by DR 4-101(C)[3] or when the confidence or secret has become generally known.

Disciplinary Rule 5-108(A). Regarding the first duty not to represent a person in the same matter with materially adverse interests as the former client, Maggio and Galestro were indicted in the same case, and Maggio admits to having participated in the same criminal activities to further the same criminal enterprise of which Galestro stands accused. Should Maggio testify, Maggio's ability to show that his inculpatory testimony is true will affect the extent to which he receives a reduced sentence in connection with his cooperation agreement. Conversely, Galestro will have an interest in showing that Maggio's testimony is false, and Galestro's counsel will undoubtedly seek to attack Maggio's credibility on cross-examination and in statements to the jury. Maggio, should he testify against Galestro, has interests that are "materially adverse" to those of Galestro. Levitt and Kaizer therefore have a duty of loyalty to Maggio not to cross-examine Maggio, or to otherwise attack his credibility during their representation of Galestro.

Regarding the second duty not to disclose confidences or secrets of a former client, despite the short length of Levitt and Kaizer's relationship with Maggio, it is clear that during that relationship Maggio discussed his culpability for *the identical crimes* that he now intends to testify about as a cooperating witness ("CW") against Galestro. Contrary to defense counsel's assertion that they have no duty to maintain confidences because Maggio, as a CW, provided the same or similar information to the Government, "[t]he privilege attaches not to the information but to the communication of the information." Cunningham, 672 F.2d at 1073 n.8. As Maggio does not consent to the divulgence of confidences obtained from him, Levitt and Kaizer may not

---

[3] This provision allows a lawyer to reveal confidences or secrets with the consent of the client or clients affected, but only after a full disclosure to them. Disciplinary Rule 4-101(C)

utilize these confidences in their representation of Galestro. "[E]ven the constitutional dimension of a criminal defendant's right to counsel of his choice does not give the defendant the right to take advantage of his preferred attorney's confidential knowledge gained from prior representation of the witness." James, 708 F.2d at 46. Levitt and Kaizer therefore have a serious potential conflict if Maggio is called as a witness against Galestro in that they will not be able to attack a key witness against Galestro or to use confidences that the witness imparted to them.

Levitt and Kaizer urge this court to adopt the reasoning in United States v. Stein, 410 F. Supp. 2d 316 (S.D.N.Y. 2006) (Kaplan, J.), in which defense counsel was not disqualified despite a potential conflict. In Stein, a defendant was represented by a law firm that also previously represented a co-conspirator in an alleged tax scheme who became a CW. Id. at 318-22. The district judge declined to disqualify counsel for several reasons, including the following: (1) the matter was a complex criminal tax case involving the review of substantial discovery for which it would be difficult to find replacement counsel who could prepare adequately for trial; (2) counsel formed a close working relationship with defendant; (3) the firm ended its relationships with its prior clients and the prior clients did not join in the motion; and, (4) the defendant consented to proceed with current counsel even if counsel was unable to cross-examine its prior clients or to assist an independent attorney hired to cross-examine those witnesses. Id. at 329.

Stein is distinguishable on its face from the case at bar because, unlike in Stein, Maggio joins the Government's motion, and there is ample time for a new attorney to prepare for trial without delay. Nevertheless, Stein articulates four factors that I find illuminating in an

8

examination of whether a potential conflict should result in disqualification: (1) the extent of Levitt's and Kaizer's obligations to Maggio; (2) the importance of Maggio's testimony to the instant prosecution; (3) the prejudice to Galestro in disqualifying Levitt and Kaizer; and (4) the extent to which Galestro understands the conflict and waives it and any consequences that flow from it.

The first two factors, Levitt and Kaizer's duty of loyalty to Maggio and the importance of Maggio's testimony, weigh heavily in favor of disqualification. Maggio does not waive his attorney-client relationship with Levitt and Kaizer, who therefore have a duty of loyalty to Maggio not to reveal confidences or to attack Maggio's credibility. Furthermore, Maggio joins the Government's motion to disqualify Levitt and Kaizer from their representation of Galestro, and "disqualification motions should be granted where the attorney in question is potentially in a position to use privileged information obtained during prior representation of the movant . . . ." Cunningham, 672 F.2d at 1072. "'Disqualification of counsel in such cases is rooted in notions of fundamental fairness; allowing an attorney to represent a client in a situation where he may use information obtained in the course of former representation of the client's adversary gives the client an unfair advantage.'" James, 708 F.2d at 45 (quoting Cunningham, 672 F.2d at 1072) (internal quotation omitted).

Taken in conjunction with the first factor, the second factor, the importance of Maggio's testimony to the instant prosecution, is dispositive. As stated supra, at trial Maggio's testimony will be essential to the charged allegations against Galestro. It is axiomatic that prior representation of a key witness against a current client is a serious conflict. See Levy, 25 F.3d at 156; see also Ciak v. United States, 59 F.3d 296, 304 (2d Cir. 1995) abrogated on other grounds

9

by <u>Mickens v. Taylor</u>, 535 U.S. 162 (2002) (on habeas appeal, discussing the potential for serious conflict when attorney sought to impeach "a key government witness who was his former client in a closely related matter"); <u>United States v. Iorizzo</u>, 786 F.2d 52, 54 (2d Cir. 1986) (reversing mail fraud convictions on ground that counsel was conflicted due to his "earlier representation of the government's key witness in a related state proceeding"). Levitt and Kaizer's confidential communications with Maggio would inevitably inform the defense counsel's strategy for attacking his credibility on cross-examination and in argument to the jury, which would impermissibly convert them into "unsworn witness[es] whose credibility is in issue." <u>United States v. McKeon</u>, 738 F.2d 26, 35 (2d Cir. 1984); <u>see also</u> <u>United States v. Gotti</u>, 771 F. Supp. 552, 563-64 (S.D.N.Y. 1991).

The prejudice to Galestro in disqualifying Levitt and Kaizer is significant but not overwhelming. Levitt's two year relationship with Galestro, (Levitt Aff. ¶ 2), militates against disqualification. See <u>Cunningham</u>, 672 F.2d at 1070-71. However, the defense's argument that they are among the only attorneys in this district with experience in federal death penalty litigation and racketeering trials (Galestro Ltr. Br. at 3 & n.2) is simply untrue. There are many experienced and capable attorneys who would not be conflicted in their representation of Galestro. Moreover, at this early stage in the litigation it would cause little prejudice to Galestro to obtain new counsel.

Addressing the last factor, Galestro's waiver of the conflict, it is difficult for this court to ascertain whether his waiver is knowing and intelligent, given the likelihood that Maggio's testimony would necessarily limit Levitt and Kaizer's effectiveness as his counsel. Moreover, it is within this court's discretion to reject a waiver if defendant's counsel has a serious potential

10

conflict likely to "burgeon into an actual conflict as the trial progresses." Wheat, 486 U.S. at 163. I also reject Levitt and Kaizer's proposal that they continue as lead counsel for Galestro with the condition that independent counsel be retained to cross-examine Maggio. Should Maggio testify, Galestro's fate might very well rest in the hands of his counsel's ability to effectively undermine Maggio's credibility. Such a scenario would place undue pressure upon Levitt and Kaizer to violate their ethical duties to Maggio. Retention of separate counsel to cross-examine Maggio would also place this court in the impossible position of policing Levitt and Kaizer's duty to Maggio not to attack his credibility during trial or to utilize confidences gathered from him in Galestro's defense. The Second Circuit has held that disqualification is proper where maintaining the accused's preferred counsel would sacrifice this court's interest "in preserving the integrity of its processes, and the government's interest in a fair trial and a just verdict." Jones, 381 F.3d at 119; see also Perez, 325 F.3d at 125 (holding that trial court retains the "discretion to reject a defendant's knowing and intelligent waiver when his attorney's conflict jeopardizes the integrity of judicial proceedings"). This court has previously held that disqualification is preferable to allowing the representation with a restriction on the cross-examination of a prior client where confidential information received by defense counsel from a prior client compromises counsel's ability to "isolate [their] knowledge about [the prior client] from the defense team . . . ." United States v. Massino, 303 F. Supp. 2d 258, 263-64 (E.D.N.Y. 2003). The Government has demonstrated a serious potential conflict that overcomes the presumption in favor of Galestro's counsel of choice. I therefore reject Galestro's waiver, and find that disqualification is the only appropriate remedy.

Contrary to defense counsel's suggestion (Tr. at 13-14), Gonzalez-Lopez does not compel

a different result.  While district courts now must consider a motion to disqualify with the knowledge that erroneous disqualification is a structural error not subject to harmless error review, 126 S. Ct. at 2562, Gonzalez-Lopez did not otherwise alter the analytical framework within which district courts consider a motion to disqualify as articulated by the Supreme Court in Wheat.  Nor does the fact that Galestro is death-eligible alter this exercise.  While the potential of Galestro's certification for the death penalty highlights the importance of this court's attention to Galestro's rights, in the case of conflicted counsel a defendant's right to *chosen* counsel is circumscribed by his right to *effective* counsel.  Having found that Levitt and Kaizer have a serious potential conflict in their representation of Galestro that substantially compromises their effectiveness and threatens the integrity of this court's proceedings, it is within the broad latitude of this court to disqualify them.

### IV. CONCLUSION

The Government's motion to disqualify Levitt and Kaizer in their representation of Galestro is GRANTED.

SO ORDERED.

Dated: August 16, 2006            _____/s/_____
       Brooklyn, N.Y.               Nicholas G. Garaufis
                                        United States District Judge